IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Magistrate Judge Boyd N. Boland

Civil Action No. 11-cv-03365-RBJ-BNB

DANIEL BRENT MILLER,

Plaintiff,

v.

CORPERAL LUSK, Teller Sheriff,
DEPUTY BAST, Teller Sheriff,
DEPUTY ODELL, Teller Sheriff, and
DEPUTY MARTINEZ, Teller Sheriff,

Defendants.
_____

**RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**
_____

This matter arises on the defendants' **Motion to Dismiss** [Doc. #18, filed 04/10/2012] (the "Motion"). I respectfully RECOMMEND that the Motion [Doc. # 18] be GRANTED IN PART and DENIED IN PART.

**I. STANDARD OF REVIEW**

The plaintiff is proceeding *pro se*, and I must liberally construe his pleadings. Haines v. Kerner, 404 U.S. 519, 520-21 (1972). I cannot act as advocate for a *pro se* litigant, however, who must comply with the fundamental requirements of the Federal Rules of Civil Procedure. Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991).

In ruling on a motion to dismiss, the court must accept the plaintiff's well-pleaded allegations as true and must construe all reasonable inferences in favor of the plaintiff. City of Los Angeles v. Preferred Communications, Inc., 476 U.S. 488, 493 (1986); Mitchell v. King, 537 F.2d 385, 386 (10th Cir. 1976). The complaint must contain specific allegations sufficient to

establish that it plausibly supports a claim for relief. Alvarado v. KOB-TV, L.L.C., 493 F.3d 1210, 1215 n.2 (10th Cir. 2007). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), overruled on other grounds by Davis v. Scherer, 468 U.S. 183 (1984).

## II.  BACKGROUND

The plaintiff is currently incarcerated by the Colorado Department of Corrections at the Limon Correctional Facility. He filed his Prisoner Complaint on January 30, 2012 [Doc. #4] (the "Complaint"). At all times pertinent to the allegations of the Complaint, the plaintiff was incarcerated at the Teller County Jail. The Complaint contains the following allegations:

1. On February 28, 2011, defendant Deputy Odell accompanied the plaintiff to court. The plaintiff requested to use the rest room prior to entering the court, but Odell "didn't want to take the time." While in court, Odell told the judge that the plaintiff was going to soil himself. The plaintiff "then cussed at Deputy Odell called him a f word liar and a piece of shit." After Odell took the plaintiff out of the courtroom, he grabbed the plaintiff by his face and slammed him onto the hardwood floor, "then landed all of his weight" on the plaintiff while the plaintiff was in a belly chain, handcuffs, and shackles. *Complaint*, p. 5.[1] The plaintiff suffered from a severe injury to his left shoulder. Id.; *Response*, p. 3.

2. On July 17, 2011, at approximately 10:00 p.m., defendant Deputy Bast entered the plaintiff's housing unit and stated that the television was being turned off early due to an inmate's failure to lock down when the television was turned off the night before. Bast further stated that the inmates could lock down at the usual time of 11:00 p.m. Five minutes later, Bast

---

[1] The Complaint is not consecutively paginated. Therefore, I cite to the pages of the Complaint as they are assigned by the court's docketing system.

reentered the unit and ordered all inmates to lock down immediately "or nobody's coming out of their cells for the next two days." The plaintiff requested to see Corporal Porcelli because he "felt like they were just trying to cause problems." Bast started to threaten the plaintiff, so the plaintiff raised his voice. Deputies Scofield and Markus entered the pod. The plaintiff was walking on the second tier catwalk when Bast came up behind him and hit him "nearly sending [him] over the rail." The plaintiff tried to defend himself, "but got hurt anyways." Id. at p. 6.

   3. On November 19, 2011, for the third day in a row, Deputy Markus and defendant Corporal Lusk conducted a "shake down" of the plaintiff's housing unit. During each shake down, the plaintiff's personal property was broken and not replaced. The plaintiff asked Lusk "at what point these shake downs become harassment?" Lusk replied that as an inmate, the plaintiff does not have privacy rights. The plaintiff informed Lusk that his cell had been left in disarray with each shake down and that his personal property was being broken and not replaced. Lusk stood in front of the plaintiff's face and yelled at him. While he was yelling, "spit came from his mouth and hit" the plaintiff's eye. The plaintiff reflexively jerked his head backward. Lusk stepped back, waited 3 to 5 seconds, then started punching the plaintiff in the face. He hit the plaintiff four times before the plaintiff shoved him away. The plaintiff then went to the ground to "cuff up." Lusk dropped his knee on the plaintiff's ribs and stayed there after the plaintiff was in cuffs. Lusk "had nearly broke" the plaintiff's ribs. Id. at p. 7.

   4. On November 19, 2011, Deputy Martinez was working in the Control Center when Corporal Lusk began to assault the plaintiff. Deputy Martinez came out of the Control Center and began to drop his knee on the plaintiff's face while Lusk was kneeing his ribs. For several weeks after the incident, Martinez harassed the plaintiff by deliberately giving him clothing that

was the wrong size even though the porter "put the right size out" for the plaintiff. Martinez is guilty of "coming to [the plaintiff's] cell threatening [him] and writing reports against [him] without getting his facts straight." Id. at p. 8.

The plaintiff brings this action under 42 U.S.C. § 1983, which provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State, . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.

I construe the Complaint as asserting claims against each defendant for excessive force in violation of the Eighth Amendment's prohibition of cruel and unusual punishment.[2] See also *Answer to Defendant's Motion to Dismiss* [Doc. #25] (the "Response"), p. 2, ¶ 5 (stating that the claims asserted are for excessive force and retaliation, not state law tort claims).[3] The plaintiff seeks nominal, compensatory, and punitive damages from each defendant. He also seeks a court order directing all deputies to cease harassment of the plaintiff. Id. at pp. 10-11.

---

[2]Any other claims the plaintiff may be attempting to assert are unintelligible and will not be recognized. See Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991) (stating that "[t]he broad reading of the plaintiff's complaint does not relieve the plaintiff of the burden of alleging sufficient facts on which a recognized legal claim could be based"). Because I construe the plaintiff's claims as Eighth Amendment claims, I do not address the defendants' argument regarding state law tort claims.

[3]The plaintiff states that he is bringing claims for retaliation. *Response*, p. 2, ¶ 5. Prison officials may not retaliate against or harass an inmate because of the inmate's exercise of his constitutional rights. Smith v. Mashner, 899 F.2d 940, 947 (10th Cir. 1990). "An inmate claiming retaliation must allege *specific facts* showing retaliation because of the exercise of the prisoner's constitutional rights." Peterson v. Shanks, 149 F.3d 1140, 1144 (10th Cir. 1998) (quotations and citation omitted) (emphasis in original). The Complaint does not contain any allegations which demonstrate that the alleged assaults and harassment were the result of the plaintiff's exercise of a constitutional right.

### III.  ANALYSIS

The defendants assert that they are entitled to qualified immunity.  Qualified immunity shields government officials sued in their individual capacities from liability for civil damages provided that their conduct when committed did not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  In order for a right to be "clearly established" for purposes of assessing entitlement to qualified immunity, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Anderson v. Creighton, 483 U.S. 635, 640 (1987).

When analyzing the issue of qualified immunity, I consider two factors.  I must determine whether the plaintiff has sufficiently alleged a violation of a statutory or constitutional right.  In addition, I must inquire whether the right was clearly established at the time of the violation.  Wilson v. Layne, 526 U.S. 603, 609 (1999); Butler v. City of Prairie Village, Kansas, 172 F.3d 736, 745 (10th Cir. 1999).[4]

The United States Constitution dictates that one shall not be subjected to "cruel and unusual punishments." U.S. Const. amend. VIII.  The language of the Eighth Amendment indicates "an intention to limit the power of those entrusted with the criminal-law function of government." Whitely v. Albers, 475 U.S. 312, 318, (1986) (quoting Ingram v. Wright, 430 U.S. 651, 664, (1977)).

Although the Eighth Amendment limits the use of force by prison officials, a certain

---

[4]The order in which I may consider these factors is discretionary.  Pearson v. Callahan, 555 U.S.223, 236 (2009).  However, both prongs must be satisfied.  Herrera v. City of Albuquerque, 589 F.3d 1064, 1070 (10th Cir. 2009).

degree of force may be necessary in a prison setting to maintain the discipline, order, and safety of all the prisoners.  The Eighth Amendment's restriction, however, does assure a prisoner's "right to be free from the terror of instant and unexpected death" at the hands of his keepers. Northington v. Jackson, 973 F.2d 1518, 1524 (1992) (quoting Burton v. Livingston, 791 F.2d 97, 100 (8th Cir. 1986)).  Accordingly, "whenever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is . . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Hudson v. McMillian, 503 U.S. 1, 6-7 (1992); see Whitely 475 U.S. at 320-21 (1986).

The defendants argue that the plaintiff fails to state a claim upon which relief can be granted because the plaintiff has alleged only a de minimis use of force.  The Supreme Court has made clear that "[d]e minimis applications of force are necessarily excluded from the cruel and unusual punishment inquiry." Northington, 973 F.2d at 1524.  In other words, "[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights." Id. (quoting Johnson v. Glick, 481 F.2d 1028, 1033 (2d Cir.)); see also Hudson, 503 U.S. at 9-10 ("The Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition de minimis uses of physical force, provided that the use of force is not of a sort 'repugnant to the conscience of mankind'").  If the force used is so minor that any reasonable or unreasonable motive for applying it is justified, the injuries do not merit a cause of action.  The law recognizes that a certain amount of force may be necessary and may be applied.

### A.  Claim One

In Claim One, the plaintiff alleges that after leaving the courtroom, Deputy Odell grabbed the plaintiff by his face; slammed him onto the hardwood floor; and "then landed all of his weight" on the plaintiff while the plaintiff was in full restraints. The plaintiff further alleges that Odell's use of force resulted in a severe shoulder injury. There are no allegations to show that Odell's use of force was necessary or reasonable to maintain or restore discipline under the circumstances. To the contrary, construing all reasonable inferences in favor of the plaintiff, the force was applied maliciously and sadistically to cause harm to the plaintiff for calling Odell names while in the courtroom.

Under these circumstances, the law is clearly established that the defendant's alleged actions violated plaintiff's rights under the Eighth Amendment. Hudson, 503 U.S. at 6-10 (allegations that officials held, punched and kicked inmate who was handcuffed and shackled sufficiently stated Eighth Amendment violation). Therefore, defendant Odell is not entitled to qualified immunity.

The Motion should be denied insofar as it seeks dismissal of Claim One for failure to state a claim upon which relief can be granted.

### B.  Claim Two

In Claim Two, the plaintiff alleges that while he was arguing with Deputy Bast, the plaintiff began to raise his voice. Bast came up behind him and hit him "nearly sending [him] over the rail." He further alleges that he tried to defend himself, "but got hurt anyways." The plaintiff admits he had escalated the situation by raising his voice and that other prisoners were present, potentially undermining Bast's authority. "An inmate who complains of a push or shove that causes no discernible injury almost certainly fails to state a valid excessive force claim."

Wilkins v. Gaddy, 559 U.S. 34, 130 S.Ct. 1175, 1178 (2010).  Unlike the allegations in Claim One, the force used here was a hit from behind to maintain order and not maliciously or sadistically to cause injury.  Consequently, the plaintiff's Eighth Amendment right to be free from the unreasonable use of force was not violated.

The Motion should be granted to the extent it seeks dismissal of Claim Two for failure to state a claim upon which relief can be granted.

### C.  Claim Three

In Claim Three, the plaintiff alleges that he informed Corporal Lusk that after each shake down, his cell was left in disarray and his personal property was broken and not replaced; Corporal Lusk began yelling at the plaintiff; "spit came from his mouth and hit" the plaintiff's eye; the plaintiff reflexively jerked his head backward; Lusk stepped back and waited 3 to 5 seconds; then punched the plaintiff in the face four times before the plaintiff shoved him away.  The plaintiff went to the ground to "cuff up."  Lusk dropped his knee on the plaintiff's ribs and stayed there after the plaintiff was in cuffs.  The plaintiff alleges that Lusk "nearly broke" his ribs.

There are no allegations of an escalating argument or of a situation requiring the use of force.  Construing all reasonable inferences in favor of the plaintiff, as I must, Corporal Lusk's punches were not made to maintain or restore order, but for the purpose of causing harm to the plaintiff.  The plaintiff's right to be free from this type of force was clearly established at the time.  Hudson v. McMillian, 503 U.S. at 6-10.  Accordingly, the Motion should be denied to the extent it seeks dismissal of Claim Three for failure to state a claim upon which relief can be granted.

### D. Claim Four

Claim Four merely alleges that Deputy Martinez came out of the Control Center and began to drop his knee on the plaintiff's face while Lusk had his knee in the plaintiff's ribs. These allegations do not infer any unreasonable use of force by Martinez. Instead, the plaintiff has alleged a benign attempt by Martinez to assist a fellow prison official. The Motion should be granted to the extent it seeks dismissal of Claim Four for failure to state a claim upon which relief can be granted.

### IV. CONCLUSION

I respectfully RECOMMEND that the Motion [Doc. # 18] be GRANTED IN PART and DENIED IN PART AS FOLLOWS:

(1) GRANTED to the extent it seeks dismissal of Claims Two and Four; and

(2) DENIED insofar as it seeks dismissal of Claims One and Three.[5]

---

[5] Pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), the parties have 14 days after service of this recommendation to serve and file specific, written objections. A party's failure to serve and file specific, written objections waives *de novo* review of the recommendation by the district judge, Fed. R. Civ. P. 72(b); Thomas v. Arn, 474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal questions. In re Key Energy Resources Inc., 230 F.3d 1197, 1199-1200 (10th Cir. 2000). A party's objections to this recommendation must be both timely and specific to preserve an issue for *de novo* review by the district court or for appellate review. United States v. One Parcel of Real Property, 73 F.3d 1057, 1060 (10th Cir. 1996).

Dated January 22, 2013.

BY THE COURT:

s/ Boyd N. Boland
United States Magistrate Judge