IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge R. Brooke Jackson

Civil Action No. 11-cv-03365-RBJ-BNB

DANIEL BRENT MILLER,

      Plaintiff,

v.

CORPERAL LUSK, Teller Sheriff,
DEPUTY BAST, Teller Sheriff,
DEPUTY ODELL, Teller Sheriff, and
DEPUTY MARTINEZ, Teller Sheriff,

      Defendants.

---

## ORDER

---

Mr. Miller is an inmate in the custody of the Colorado Department of Corrections housed at Limon Correctional Facility (LCF).  In this Section 1983 suit he complains that four correctional officers used excessive force against him on three different dates.  Presently pending are defendants' motion to dismiss [docket #18]; plaintiff's motion to accept his response to the motion to dismiss out of time and to amend his complaint [#47]; and Magistrate Judge Boland's denial of the motion to file an untimely response, recommendation to deny the motion to amend, and recommendation that the motion to dismiss be granted in part and denied in part [##53 and 54].

### Standard of Review

Following the issuance of a magistrate judge's recommendation on a dispositive matter the district court judge must "determine *de novo* any part of the magistrate judge's disposition that has been properly objected to."  Fed. R. Civ. P. 72(b)(3).  The district judge is permitted to

1

"accept, reject, or modify the recommended disposition; receive further instruction; or return the matter to the magistrate with instructions." *Id.* When a magistrate judge issues an order on a non-dispositive pretrial matter, "[t]he district judge in the case must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a).

**Facts**

Mr. Miller's *pro se* Prisoner Complaint [#4], filed January 30, 2012, alleges that he is the victim of excessive force in violation of the Eighth Amendment's prohibition of cruel and usual punishment. In his first claim Mr. Miller alleges that while he was at the Teller County Courthouse on February 28, 2011, Deputy Odell grabbed him by the face, slammed him to the ground, and then put his full weight on Mr. Miller's left shoulder, causing injury. Mr. Miller was in handcuffs, shackles, and a belly chain at the time. In his second claim Mr. Miller alleges that at the Teller County Jail on July 17, 2011, after Deputy Bast started to threaten him and he raised his voice back, the deputy hit him from behind. Mr. Miller was on a second floor catwalk, and he alleges that the blow nearly sent him over the edge. Mr. Miller says he then defended himself but ended up hurt. In his third claim, Mr. Miller alleges that on November 19, 2011 Corporal Lusk punched Mr. Miller in the face. Once Mr. Miller was on the ground, Corporal Lusk kneed Mr. Miller in the ribs, even after Mr. Miller was in handcuffs. Mr. Miller's fourth claim alleges that Deputy Martinez, who was in the control room and could see the assault by Corporal Lusk, responded by coming out of the control room and pressing his knee into Mr. Miller's face while Corporal Lusk had him on the ground. Mr. Miller also alleges that Deputy Martinez has retaliated against him in the weeks after the incident by giving him the wrong sized clothing and writing reports against Mr. Miller before verifying the underlying facts.

On April 10, 2012 defendants moved to dismiss the complaint, contending that they were shielded from liability by the doctrine of qualified immunity.  Mr. Miller requested an extension of time to respond, and Magistrate Judge Boland extended the response time to May 30, 2012. On May 21, 2012 Mr. Miller filed a response to the motion to dismiss which in substance was a request that he be permitted to amend his complaint and a number of paragraphs setting forth his proposed amendments.  Judge Boland denied the motion to amend on May 29, 2012, without prejudice, and explained that a proposed amended complaint must be separately filed rather than being included in a response to a motion to dismiss pursuant to Local Rule 7.1C.  [#28].

Mr. Miller then requested another extension of time to respond to the motion to dismiss. Judge Boland gave Mr. Miller until July 19, 2012 to file an amended response to the motion to dismiss.  Mr. Miller did not do so.  However, on August 6, 2012 he filed another motion for extension of time to respond to the motion to dismiss and to amend his complaint, this time requesting 60 more days.  On August 9, 2012 Judge Boland denied the motion insofar as it sought an extension of time to file an amended complaint, explaining that Mr. Miller had not complied with his previous instructions on how an amended complaint must be filed; but he did grant another extension of time to September 3, 2012 for plaintiff to file an amended response to the motion to dismiss.  [#40].

Mr. Miller did not file an amended response by that date.  Instead he filed a notice of appeal from the August 9, 2012 order.  The Court of Appeals dismissed the appeal on September 14, 2012.

On October 11, 2012 Mr. Miller filed a request to accept a response to the motion to dismiss out of time.  [#47].  He indicated that he did not meet the September 3, 2012 deadline because of a lockdown that caused the library to be closed.  He did not indicate when the

lockdown occurred, or how long the library was closed.  Nor did he respond to the motion to dismiss as such, but he attached a proposed amended complaint as an exhibit, implicitly moving for leave to amend as his response to the motion to dismiss [#47-2].

On January 22, 2013 Magistrate Judge Boland denied the request to file an untimely response to the motion to dismiss, and recommended that this Court deny his request to amend his complaint.  [#53].  In a separate order issued on the same day the magistrate judge recommended that this Court grant the motion to dismiss claims two and four but deny the motion to dismiss claims one and three.  [#54].  Defendants did not object to the portion of the latter order recommending that their motion to dismiss claims one and three be denied.  Mr. Miller requested and was granted an extension of time and then did file a timely objection to both orders on February 15, 2013 [#65].  Defendants responded to plaintiff's objection on February 26, 2013 [#68], making it ripe for consideration by this Court.

**Conclusions**

A.  <u>Motion to Dismiss</u>

The qualified immunity doctrine "shields government officials performing discretionary functions from liability for damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Toevs v. Reid,* 685 F.3d 903, 909 (10th Cir. 2012) (internal citations omitted).  Qualified immunity can be asserted at both the dismissal stage and the summary judgment stage of litigation.  *Behrens v. Pelletier,* 516 U.S. 299, 307 (1996).  "In reviewing a Rule 12(b)(6) motion in the context of qualified immunity, a district court should not dismiss a complaint 'for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim

which would entitle him to relief.'" *Peterson v. Jensen,* 371 F.3d 1199, 1201 (10th Cir. 2004) (quoting *Currier v. Doran,* 242 F.3d 905, 917 (10th Cir. 2001).

"Once a defendant raises the defense of qualified immunity in the context of a motion to dismiss, a court must first determine whether the plaintiff has asserted a violation of federal law." *Currier,* 242 F.3d at 917.  Second, "the plaintiff must demonstrate to the court that the law on which the plaintiff relies was clearly established at the time of the defendants' actions.  The plaintiff must prove the right was sufficiently clear that a reasonable official would have understood that his conduct violated the right." *Id.* at 923. (internal citations omitted).

In his second claim Mr. Miller alleges that he was arguing with Deputy Bast and began to raise his voice.  Mr. Miller was on a second floor walkway that had a railing protecting him from falling to the first floor.  Deputy Bast came up behind Mr. Miller and hit him.  Mr. Miller alleges that this contact nearly sent him over the rail.

Determining whether physical force violates an inmate's Eighth Amendment right to be free from cruel and unusual punishment turns '"whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically for the very purpose of causing harm.'" *Whitley v. Albers,* 475 U.S. 312, 320-21 (1986)(citation omitted).  The extent of injury is one factor that can be used in determining whether the use of force could have been deemed necessary in a particular situation.  *Wilkins v. Gaddy,* 559 U.S. 34, 130 S. Ct. 1175, 1178 (2010). Not every malevolent touch by a prison official rises to the level of a constitutional violation. *Hudson v. McMillian,* 503 U.S. 1, 9 (1992).  "An inmate who complains of a 'shove or push' that causes no discernible injury almost certainly fails to state a valid excessive force claim." *Wilkins,* 130 S.Ct. at 1178.

Mr. Miller did not allege that Deputy Bast's "hit" from behind caused any injury. He does allege that he tried to defend himself "but got hurt anyways." That allegation is too vague to make out a plausible claim of an improper use of force that caused a discernible injury. Accordingly, I agree with Judge Boland that Deputy Bast is entitled to qualified immunity.

In his fourth claim, Mr. Miller alleges that after Corporal Lusk had Mr. Miller on the ground with his knees on Mr. Miller's ribs, Deputy Martinez came out of the control room and put his knee on Mr. Miller's face. Mr. Miller describes a situation where there was a quickly unfolding situation between him and Corporal Lusk. Seeing that Mr. Miller was being forced to the ground by Corporal Lusk, Deputy Martinez responded and assisted. Mr. Miller has not alleged facts that suggest that Deputy Martinez's behavior was malicious or sadistic or otherwise done to cause harm. It is constitutional for corrections officers to apply force in a good-faith effort to maintain or restore discipline. *Wilkins,* 130 S.Ct. at 1178. Moreover, if I assume for the sake of argument that Deputy Martinez's conduct was excessive, it still must be shown that he violated a clearly established right to avoid qualified immunity. In analyzing whether the right was established the test is whether it would have been "clear to a reasonable [person] that his conduct was unlawful under the circumstances presented." *Herrera v. City of Albuquerque*, 589 F. 3d, 1064 1070 (10th Cir. 2009). The facts alleged by Mr. Miller provide no basis to suggest that, by assisting Corporal Lusk to restrain Mr. Miller, Deputy Martinez was violating a clearly established right.

Mr. Miller also alleges, as part of his fourth claim, that Deputy Martinez retaliated against him after this incident. To state a claim for retaliation, the plaintiff must plead facts indicating that he can plausibly prove three elements at trial: "(1) that the plaintiff was engaged in constitutionally protected activity; (2) that the defendant's actions caused the plaintiff to suffer

6

an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (3) that the defendant's adverse action was substantially motivated as a response to the plaintiff's exercise of constitutionally protected conduct." *Shero v. City of Grove*, 510 F.3d 1196, 1203 (10th Cir.2007).  Mr. Miller has not alleged that Deputy Martinez retaliated against him for protected conduct.  Rather he alleges that following this incident with Corporal Lusk Deputy Martinez began to give him the wrong size clothes and write reports against Mr. Miller without verifying the underlying facts.  This is not sufficient to state a claim for retaliation. Accordingly, defendants' motion for summary judgment should be granted as to claim four.

B.  <u>Motion to File Amended Response to Motion to Dismiss Out of Time</u>

Because Mr. Miller objected to Judge Boland's order denying Mr. Miller's motion to accept his amended response out of time, this Court reviews that order for clear error.  Fed. R. Civ. Pro. 72(a).  Under Federal Rule of Civil Procedure 6(b)(1)(B), a court may grant extensions of time "on motion made after the time has expired if the party failed to act because of excusable neglect."  Excusable neglect is a "somewhat elastic concept and is not limited strictly to omissions caused by circumstances beyond the control of the movant."  *Pioneer Inv. Servs. Co. v. Brunswick Assocs. L.P.,* 507 U.S. 380, 392 (1993).  In applying the excusable neglect standard, courts analyze all relevant circumstances, including the "danger of prejudice to the [nonmoving party], the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith."  *Id.* at 395.

Magistrate Judge Boland granted multiple extensions of time to accommodate Mr. Miller and his limited access to the law library while incarcerated.  Mr. Miller's October 11, 2012 request to accept his response out of time was filed more than four months after the motion to

dismiss would have become ripe absent the extensions granted to him.  This was already a

substantial postponement, and allowing more time for Mr. Miller to amend his response would

have led to even more delay in considering the motion.  Further, as Judge Boland described in

his pleadings, he had reason to doubt whether Mr. Miller was acting in good faith.  Analyzing the

circumstance in their entirety, Judge Boland's decision not to allow additional delay was not

clearly erroneous.

      C.  Motion for Leave to File an Amended Complaint

Rule 15(a) of the Federal Rules of Civil Procedure allow a party to amend pleadings by

leave of court, which leave must be freely given when justice so requires.  However, a motion to

amend may be denied on grounds of undue delay, bad faith, or futility of the amendment.

*Foman v. Davis*, 371 U.S. 178, 182 (1962).  The Prisoner Complaint was filed on January 30,

2012.  Mr. Miller attempted to amend his complaint in his first response to the motion to dismiss

[#25], filed May 21, 2012.  The motion was denied on procedural grounds, without prejudice, on

May 29, 2012.  Magistrate Judge Boland outlined what Mr. Miller would need to do properly to

file an amended complaint.

As indicated above, Mr. Miller did not follow those instructions at the time.  [#28].  On

October 11, 2012, as an exhibit to a motion to accept a response to a motion to dismiss out of

time, Mr. Miller tendered a proposed amended complaint.  [#47-2].  Magistrate Judge Boland

treated the motion as dispositive and recommended that this Court deny the motion.  [#53].

Assuming without deciding that the motion was dispositive, I review the matter de novo.

The magistrate judge found that allowing plaintiff to amend would be the equivalent of

starting over and would unduly delay the case.  I agree.  Defendants' motion to dismiss was filed

on April 10, 2012.  Had Mr. Miller responded in a timely fashion with a properly presented

motion to amend, it might have mooted the motion to dismiss.  Magistrate Judge Boland told him how to do it in his May 29, 2012 order.  But he didn't do it.  Instead, he sought and obtained two more extensions of time to respond to the motion to dismiss, the second one (granted even though it was requested after the first extended deadline has passed) to September 3, 2012.  He did not meet that deadline either.  He finally filed a response to the motion to dismiss on October 11, 2012.  His excuse for not meeting the September 3 deadline was that a lockdown caused the law library to be closed.  That rings hollow.  Not only did he not indicate when the lockdown occurred, or for what period of time the library was closed, but his response to the motion to dismiss was the tender of a proposed amended complaint that had nothing to do with what could be found in a law library.  It amplified the allegations of fact a little, but it alleged no facts that were not known to the plaintiff when his original Prisoner Complaint was filed.

As Judge Boland found, if the amended complaint were accepted as a response to the motion to dismiss, it would put the defendants back to where they were six months earlier and force them to start over.  There is no good excuse for that in the circumstances presented here.  It does amount to "undue delay," which is a proper basis to deny a motion to amend.  *Foman,* 371 U.S. at 182.  Accordingly, I accept the magistrate judge's recommendation to deny the motion for leave to file an amended complaint.

**Order**

1.  Defendant's motion to dismiss [#18] is GRANTED IN PART and DENIED IN PART.  It is granted as to claims 2 and 4 and denied as to claims 1 and 3.

2.  Plaintiff's motion to file an amended response out of time and for leave to file an amended complaint [#47] is DENIED.

3.  The magistrate's order and recommendation denying plaintiff's motion to file an amended response out of time and for leave to file an amended complaint [#53] is ADOPTED.

4.  The magistrate's recommendation to GRANT IN PART and DENY IN PART defendants' motion to dismiss [#54] is ADOPTED.

DATED this 11th day of March, 2013.

BY THE COURT:

_____
R. Brooke Jackson
United States District Judge